GULF, COLORADO AND SANTA FE RAILWAY COMPANY v. J. B.
TALIAFERRO.

Decided October 28, 1905.

**Cattle Pens—Escape of Cattle.**

Defendant company had provided a sufficient chain and lock for fastening
the gate to the pens in which plaintiff's cattle were placed. The chain was on
the gate and the lock was fastened in the chain; the key to the lock was kept
in the office at the depot. No inquiry was made by the plaintiff or his employes
of the agent for the key, but instead, the gate was fastened by one of plain-
tiff's employes with a barbed wire. The cattle took fright from some unknown
cause and escaped through the gate. Held, no evidence of negligence on de-
fendant's part.

Appeal from the District Court of Cooke. Tried below before Hon.
D. E. Barrett.

*J. W. Terry* and *A. H. Culwell,* for appellant.—Where the evidence
shows, as it does in this case, that the defendant had provided sufficient
pens and secure fastenings thereto, and that the plaintiff and his serv-
ants placed his cattle in the pens and failed to use the means or fasten-
ings to the gates which had been provided by the defendant company,
the evidence also showing that such means were ample and sufficient
to have prevented the cattle from escaping, then the failure of the
plaintiff to use and adopt such means will be considered as the proxi-
mate cause of any resulting injury, and for which failure he will not
be entitled to recover.

The evidence in this case shows that the plaintiff, in and on his
own responsibility, placed the cattle in the pens, and adopted his own
method and means of securing said cattle pens; that no agent or serv-
ant of the company had anything whatever to do with the placing
of the cattle in the pens, or of securing them therein, and under such
circumstances the plaintiff assumed the responsibility to secure the safe-
ty of the cattle in the pens, and if he failed to adopt such means as
were sufficient to accomplish that purpose, he, alone, will be responsible
for the result, and no liability can or will attach to the railway company
by reason of his conduct in the premises.

*J. H. Garnett* and *W. O. Davis,* for appellee.—The shipping pens of
a railway company are, in contemplation of law, the depot for the
reception of livestock, and if they are negligently maintained, as in this
case, and damages result to the shipper by reason of such negligence,
the railway company is liable, and the record contains sufficient evi-
dence of negligence to justify the verdict of the jury. Texas & P. Ry.
Co. v. Bigham, 90 Texas, 228; Ft. Worth & D. C. Ry. Co. v. Wagoner
Nat. Bank, 81 S. W. Rep., 1050; Lackland v. Chicago & Alton Ry. Co.,
74 S. W. Rep., 505; Gulf, C. & S. F. Ry. Co. v. Trawick, 68 Texas,
314; Missouri, K. & T. Ry. Co. v. Byrne, 49 S. W. Rep., 42; Hutchin-
son on Carriers, sec. 89.

CONNER, CHIEF JUSTICE.—This is an appeal from a judgment of

$1,530 for damages to appellee's cattle which had been driven to appellant's station at Pauls Valley, Indian Territory, to be there loaded on the cars for shipment to market. It was alleged that said cattle were frightened by carelessness, and negligent noise made by an engine whistle which caused said cattle to stampede and escape from the pens, and further, that fastenings to the gate of said pens were defective and insecure, and that by reason of such negligence appellee was required to spend five or six days in searching for and gathering said cattle and that they were caused to shrink in flesh and value.

The appellant answered the suit, among other things, by the general denial and a special plea to the effect that appellee himself undertook to see that the cattle were secure in the pen, and that he had wholly failed to fasten the gate, though ample means for so doing had been furnished him, and that if the cattle escaped, it was by reason of the negligence of the appellee and his employes.

The principal assignments of error question the sufficiency of the evidence to sustain the verdict and judgment in appellee's favor. The uncontradicted evidence shows that about dark on the day alleged appellee, together with a number of others, drove and placed in appellant's cattle pens at Pauls Valley one hundred and eighty-three head of fat, three, four, and five-year-old steers, at least one hundred of which would average one thousand pounds each, and the remainder from nine hundred and fifty to nine hundred and seventy-five pounds. The pens were some two hundred and fifty yards from the depot. They were provided with gates that opened to the right and left and closed upon a short post in the center with a heavy chain. Nothing in the evidence indicates that the pens or gate were materially defective, and the controverted point being whether appellant was guilty of negligence in failing to provide a sufficient fastening for the gates. The chain mentioned was strong, and appellee testifies that had it been locked, it would have prevented the escape of his cattle. A lock was found in the chain hanging on the gate and some inquiry was made for a key, but none was found. The lock being fastened to the chain, one of the employes fastened it around the upright supports of the gate with a piece of barbed wire that he found hanging through one of the end links, he testifying, that he ran the barbed wire three times through the links of the chain, and thus fastened the gate. Appellee was present when the gates were fastened but did not get off his horse. Immediately afterward he went to the depot and informed the agent of the fact that the cattle had been penned; but being hungry, all parties went to a restaurant and got their supper, after which appellee went to the depot to fix up the shipping contracts, and the remainder of his party went to the pens to see about loading the cattle. In fixing up the contract, the agent desired the names of the parties who were to accompany the cattle, and appellee started to the pens to get the names and met those who had been in charge coming to the depot, and was by them informed that the cattle had broken out. There is evidence tending to show that about the time the cattle broke out, an engine backed down near the cattle pens for some purpose, but there is no evidence whatever that in doing so, the operatives were guilty of negligence of any degree. No one was present when the cattle broke

out, and just what caused the stampede is uncertain, except as it may be inferred from the fact of the movement of the engine mentioned and the nature and kind of cattle. The key to the lock was kept in a drawer by the agent in his office. Neither appellee nor anyone else in charge of the cattle inquired of the agent for the key, or demanded of him that he see that the cattle were more securely fastened. Neither did the agent proffer to appellee the key upon his appearance at the depot. Just how it so occurred does not clearly appear, the facts being, however, as stated.

We fail to find any evidence of negligence upon which appellee's case can rest. It is urgently insisted that appellee could properly act upon the belief that the wire found in the chain was the means furnished by appellant for the purpose of fastening the gate. If so, nothing in the evidence save the mere fact that it broke tends to show that it was not such as would have been deemed sufficient by a man of ordinary care and prudence. Neither the size of the wire nor its strength was shown, and the evidence leaves no room for doubt that the employe to whom was committed the duty of fastening the gate by appellee deemed the fastenings sufficient. He knew the cattle, had every opportunity of observation that was available to the employes of appellant, and if he was not guilty of negligence in insecurely fastening the gate, as in effect affirmed by the verdict of the jury under the submitted issue of contributory negligence, it is difficult to see how negligence could be predicated upon appellant's failure to provide a stronger wire. The fact is, however, as seems to be undisputed in the evidence, that the means furnished by appellant for the purpose of fastening the gate was the lock and key mentioned. There is nothing in the evidence indicating that it was appellant's duty to keep the key at the cattle pens, nor is it alleged that it was the agent's duty to take the key to the pens when informed of the fact that the cattle had been placed therein, and the only cause of the failure, so far as we can see, of appellee to secure his cattle by lock and key was his neglect to inquire of the proper person for the key.

In our opinion appellee's recovery is without support in the evidence, and it appearing that the case has been fully developed, we conclude that the judgment should be reversed and here rendered for appellant, and it is so ordered.

*Reversed and rendered.*

Writ of error refused.